FILED

2009 JUL 21  P 12: 11

U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAMES CASTELLUCCIO,        :
           Plaintiff        :     CIVIL ACTION NO.
                       :
VS.                   :     **309CV1145 MRK**
                       :
INTERNATIONAL BUSINESS     :
MACHINES CORPORATION       :
           Defendant.   :     JULY 20, 2009

## COMPLAINT

The Plaintiff, James Castelluccio ("Mr. Castelluccio"), files this Complaint against International Business Machines Corporation ("IBM") and states the following:

### NATURE OF THE ACTION

This action is brought by Mr. Castelluccio against IBM, his former employer of forty years, for: (1) unlawfully and willfully terminating him on the basis of his age, in deprivation of his rights secured by the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, as amended; (2) terminating him on the basis of his age in violation of New York State Human Rights Law ("NYSHRL"), NY CLS Exec § 296(a); and (3) unlawfully and willfully terminating him in retaliation for making an internal complaint of age discrimination in deprivation of his rights secured by 29 U.S.C.

1

§ 623(d) and section 15 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 215, as well as NYSHRL § 296(d).

In connection with Mr. Castelluccio's claims, he seeks reinstatement or front pay, compensatory money damages for lost wages, lost benefits and other employee compensation, money damages for emotional distress as well as liquidated damages and attorneys' fees.

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over this controversy pursuant to the ADEA, 29 U.S.C. § 626(b), and 28 U.S.C. § 1331.

2.      This Court also has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(i) in that the action involves citizens of different states and an amount in controversy in excess of $75,000 exclusive of interest and costs.

3.      This Court also has supplemental jurisdiction over Mr. Castelluccio's age discrimination and retaliation claims under NYSHRL § 296(a) pursuant to 28 U.S.C. § 1367(a).

4.      On November 17, 2008, Mr. Castelluccio filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights ("NYSDHR").

5.      Mr. Castelluccio's charge was filed with the EEOC within the time limits prescribed in 29 U.S.C. § 626(d).

6.      On June 18, 2009, the EEOC issued a Notice of Right to Sue ("Notice") authorizing Mr. Castelluccio to file suit against IBM within 90 days of Mr. Castelluccio's receipt of the EEOC's Notice.  This Complaint is filed within the specified 90 day period.

7.      On July 16, 2009, the NYSDHR issued a Determination and Order of Dismissal for Administrative Convenience of Mr. Castelluccio's complaint.

PARTIES

8.      Mr. Castelluccio is 62 years of age and currently resides at 85 Davenport Lane East, Stamford, Connecticut.

9.      At all times relevant herein, IBM was and is a stock corporation and employer within the meaning of 29 U.S.C. § 630(b) duly organized and existing under the laws of the State of New York, employing at least 20 employees.

STATEMENT OF CLAIMS

Factual Background

10.     Mr. Castelluccio began working for IBM in March of 1968 as a Computer Analyst.

3

11.     Mr. Castelluccio's consistent good performance at IBM was rewarded with progressive salary increases and promotions during the span of his 40 years of service to the Defendant.

12.     More recently, in or about 2000, Mr. Castelluccio was promoted to the level of Vice President.

13.     In or about 2005, Mr. Castelluccio was promoted to Vice President of Public Sector Delivery for IBM's Integrated Technology Division.

14.     Mr. Castelluccio's performance reviews in his position as Vice President were positive and above-average.   In 2005, he received a rating of "above average contributor," and in 2006 he received a rating of "solid contributor."

15.     Pursuant  to  IBM's  "Personal  Business  Commitments  (PBC)  –  Assessments and Ratings" document, a "solid contributor" rating is defined as: "Consistently achieves goals and meets job expectations; is reliable in doing job. Demonstrates appropriate level of knowledge, skill, effectiveness and initiative."

16.     In or about February of 2007, Mr. Castelluccio's existing supervisor, Kelton Jones, was replaced by Joanne Collins-Smee ("Ms. Collins-Smee"), who is approximately ten years younger than Mr. Castelluccio.

4

17.     Within one week of Ms. Collins-Smee's commencement as Mr. Castelluccio's supervisor, Ms. Collins-Smee held a meeting with Mr. Castelluccio wherein she asked him how old he was and suggested that he was "old enough" to bridge to retirement at that time.  Mr. Castelluccio replied that he was not interested in bridging to retirement.

18.     Ms. Collins-Smee made additional comments to Mr. Castelluccio regarding his ability to bridge to retirement in or about November 2007 and March 2008.

19.     Ms. Collins-Smee also indicated to Mr. Castelluccio in or about March 2007 that one of his direct reports, Ken Wisse ("Mr. Wisse"), was old enough to retire as well.  Mr. Castelluccio informed Ms. Collins-Smee in response that Mr. Wisse played a valuable role in his organization and was his primary backup.

20.     In or about March of 2007, the Senior Delivery Project Executive ("SDPE") assigned to work on IBM's account with its customer Wellpoint ("Wellpoint account") resigned due to the high stress and difficulty of the position.

21.     In or about late March of 2007, Ms. Collins-Smee announced that Mr. Castelluccio would assume the SDPE position for the Wellpoint account until a replacement could be found.  Mr. Castelluccio was told that his assumption of this

position—which was *in addition to*, not in lieu of, his duties attendant to his current position as Vice President—was temporary.

22.     Wellpoint's Chief Information Officer rejected the candidate initially intended to fill the SDPE position at Wellpoint, Ken Weiss, before he was scheduled to begin his duties in mid-April of 2007.

23.     In or about June of 2007, Ms. Collins-Smee announced the hiring of Miguel Echavarria ("Mr. Echavarria") to fill Mr. Castelluccio's position as Vice President of Public Sector Delivery for IBM's Integrated Technology Division.  At that time, Ms. Collins-Smee informed Mr. Castelluccio that he was to perform the SDPE position at Wellpoint on a full-time basis from that point forward.

24.     Mr. Echavarria was approximately ten years younger than Mr. Castelluccio at the time he replaced Mr. Castelluccio in his position as Vice President.

25.     Mr. Echavarria had less experience than Mr. Castelluccio and was less qualified for the position.

26.     Mr. Castelluccio was not previously informed that he would be replaced in his Vice President position and was not informed that he was removed from this position due to any performance deficiencies.

6

27.    At all relevant times, Ms. Collins-Smee knew that the Wellpoint account was a particularly demanding account.

28.    Despite the degree of difficulty associated with the Wellpoint account, Mr. Castelluccio performed well in his role as SDPE for Wellpoint and accomplished substantial progress in meeting the client's objectives and IBM's financial needs and concerns.

29.    Mr. Castelluccio's effectiveness on the Wellpoint account was undermined, however, by Ms. Collins-Smee's actions.  On two separate occasions after Mr. Castelluccio was assigned as SDPE on the Wellpoint account, Ms. Collins-Smee rejected Mr. Castelluccio's Purchase Request to obtain a Blackberry PDA that was a standard IBM-approved technology.  Mr. Castelluccio sought the PDA to assist him in the management of the Wellpoint accounts by providing timely notification of problems or client issues.  IBM had an automated system that sent out electronic emails when a customer system outage occurred, including details on the nature of the problem, the time of outage and the number of customer clients impacted.  The system also provided a call-in number to allow Mr. Castelluccio to resolve the issue with both IBM technicians and the customer.

7

The PDA was needed to provide a communications link to allow Mr. Castelluccio to correspond with Wellpoint and the IBM support team assigned to the account. The PDA would have provided Mr. Castelluccio with the unlimited ability to send and receive emails as well as "instant messages" to discuss with his team any necessary additional support, which was critical to timely responding to these client problems. The PDA would have provided Mr. Castelluccio with 24-hour email capability to allow him to immediately respond to Wellpoint's issues or requests that frequently arose after work hours. Ms. Collins-Smee's denials of these requests occurred in or about April and June of 2007.

30.    In or about June of 2007, Ms. Collins-Smee presented Gordon Crawford ("Mr. Crawford") to the Wellpoint Chief Information Officer as a candidate for the SDPE position for his approval.

31.    In or about November 2007, Ms. Collins-Smee informed Mr. Castelluccio that Mr. Crawford would be replacing him as SDPE for the Wellpoint account. In this meeting, Ms. Collins-Smee referenced Mr. Castelluccio's age and pointedly repeated again that he was old enough to bridge to retirement. Although Mr. Castelluccio felt pressured by Ms. Collins-Smee's repeated reference to his age and ability to retire, he replied that he was not interested in retiring.

8

32.    Mr. Castelluccio remained on the Wellpoint account until on or about January 5, 2008.

33.    In a customer satisfaction survey dated February 13, 2008 that measured Wellpoint's satisfaction for 2007, the period for which Mr. Castelluccio served as the primary SDPE on the account, Wellpoint measured its overall satisfaction as an "8" out of a possible "10."

34.    In January 2008, Mr. Castelluccio received his performance review for 2007 that was completed by Ms. Collins-Smee.  Mr. Castelluccio outlined all of his accomplishments from 2007 in his roles as Vice President and SDPE for Wellpoint in his "PBC" document.  Ms. Collins-Smee awarded Mr. Castelluccio with a "2" rating as a "solid contributor," which is the same rating he had received in 2006.

35.    No issues regarding Mr. Castelluccio's performance in either his position as Vice President or as SDPE for Wellpoint were noted in his 2007 performance review. In Ms. Collins-Smee's narrative overall assessment of Mr. Castelluccio for 2007, she stated, in relevant part:

> [Mr. Castelluccio] started the year as the ITDelivery VP for Public Sector. In the second half of the year, he was acting PE on the Wellpoint account. In the Public Secor [sic] role [Mr. Castelluccio's] team reduced headcount significantly and we were able to continue to meet our service level objectives.  On the Wellpoint account, [Mr. Castelluccio] and the team has

9

[sic] made significant progress on programs to improve service quality and reduce cost. . . .

36.     After Mr. Castelluecio was removed from the Wellpoint account, Ms. Collins-Smee refused to provide him with any new work assignments for approximately six months despite his requests for such assignments and although he was still employed by IBM and she remained his supervisor. Rather, in order to be productive, Mr. Castelluccio was forced to seek assignments on his own initiative.

37.     In a meeting requested by Mr. Castelluccio in which he sought from Ms. Collins-Smee to be assigned meaningful work in March of 2008, Ms. Collins-Smee again made reference to Mr. Castelluccio's retirement and his age.  In a discussion of Mr. Castelluccio's future with IBM, Ms. Collins-Smee matter-of-factly stated—*for the third time overall*—that Mr. Castelluccio had an opportunity to retire since he was old enough. Although he was significantly demoralized by her repeated suggestions of retirement, Mr. Castelluccio again indicated that he was not interested in retiring.

38.     Since his removal from the Wellpoint account in early January 2008, Ms. Collins-Smee had not only totally ignored Mr. Castelluccio, but she had also excluded him from important meetings.  As a result, Mr. Castelluccio was denied the opportunity to demonstrate his capabilities so that he could secure a future job opportunity elsewhere at IBM.

10

39.     Ms. Collins-Smee agreed that she would assist Mr. Castelluccio in obtaining an equivalent executive position at IBM, but failed to recommend him for several positions that had opened up after November of 2007. Additionally, Ms. Collins-Smee only made inquiries into available executive positions (which are not posted in IBM, unlike non-executive positions) for Mr. Castelluccio as a result of his repeated requests. Moreover, she delayed making these inquiries until late May of 2008, merely one week before she gave Mr. Castelluccio notice of his termination.

40.     On or about February 15, 2008, Mr. Castelluccio sent an e-mail communication to Garret Walker ("Mr. Walker"), a human resources professional at IBM. In this e-mail, Mr. Castelluccio opposed conduct by Ms. Collins-Smee that he perceived as age discrimination. He expressed his concern that he was being targeted by Ms. Collins-Smee without justification and that his career was being jeopardized in order to "hasten his retirement." Mr. Castelluccio also put Mr. Walker on notice that he had not been made aware of or considered for available positions within and outside his organization, as he had requested and as Ms. Collins-Smee had agreed.

41.     Mr. Castelluccio further discussed his concerns with Mr. Walker in meetings held on or about February 29, 2008 and March 4, 2008, wherein Mr.

11

Castelluccio specifically informed Mr. Walker that he opposed Ms. Collins-Smee's actions demonstrating her intent to terminate his employment on the basis of his age.

42.     On or about May 20, 2008, Ms. Collins-Smee informed Mr. Castelluccio that a severance package had been prepared for him with a date of termination of June 30, 2009.

43.     On or about June 23, 2008, at Mr. Castelluccio's request, IBM's Human Resources Department initiated an "Open Door Investigation" into Mr. Castelluccio's claim that his impending termination was due to his age.

44.     Mr. Castelluccio's employment was terminated effective June 30, 2008.

45.     On August 11, 2008, Mr. Castelluccio was notified that the Open Door Investigation resulted in a determination that he was treated "fairly" with respect to his termination.  Mr. Castelluccio was not provided with any details for the basis of this conclusion or with the results reached through any of the various interviews that IBM's human resources department allegedly took regarding the circumstances surrounding Mr. Castelluccio's termination and his claim of age discrimination.

46.     As an executive-level employee at IBM who had worked for IBM for virtually all of his professional life, Mr. Castelluccio is highly familiar with IBM's termination process.

47.     Prior to an employee's termination at IBM, managers were instructed to administer "progressive discipline," by informing the employee of his or her performance concerns and allow the employee an opportunity to remedy such performance concerns within a specific period of time.   However, despite his decades of superior job performance and his 40-year career with IBM, IBM, acting through Ms. Collins-Smee, failed to adhere to its well-established progressive discipline practice.

48.     In the year prior to being wrongfully terminated, Mr. Castelluccio's annual salary and bonus totaled approximately $284,998.

## VIOLATIONS OF LAW

### **Count One** *(Violation of the ADEA)*

49.     IBM's actions in terminating Mr. Castelluccio's employment were wilful, unlawful and discriminatory on account of his age in violation of the provisions of the ADEA, 29 U.S.C. §§ 621, et seq.

50.     Specifically, the following facts and circumstances demonstrate IBM's discriminatory violation:

(a)     Mr. Castelluccio was terminated by IBM at age 61, at which time he was the oldest individual employed within IBM's "IT America's Delivery" organization and

13

the oldest of five Vice Presidents heading up various "sectors" within the organization who reported to Ms. Collins-Smee;

(b)     Mr. Castelluccio's supervisor from March 2007 until his termination, Ms. Collins-Smee, made repeated inappropriate references to Mr. Castelluccio regarding his age and his ability to "bridge to retirement";

(c)     Ms. Collins-Smee's bias statements began as early as one week after assuming her role as his supervisor and continued until shortly before his termination;

(d)     These repeated references were made in discussions with Mr. Castelluccio in which he was addressing his future employment opportunities at IBM and were therefore highly demoralizing;

(e)     Ms. Collins-Smee's decision to remove Mr. Castelluccio from his position as Vice President made it more difficult for him to succeed in his job performance due to the difficulty of the Wellpoint account;

(f)     Ms. Collins-Smee elected to replace Mr. Castelluccio in his position as Vice President with a less qualified individual who was ten years younger without just cause and never told Mr. Castelluccio in advance that he would be replaced in this position or that his performance in the position was at issue;

14

(g)     Mr. Castelluccio was informed that his employment was terminated due to poor job performance despite the facts that: (i) he never received an unfavorable performance review while at IBM and had been rated a "solid contributor" for his performance in 2007; and (ii) Wellpoint's customer satisfaction survey completed in February 2008 rated IBM's service in 2007, under Mr. Castelluccio's supervision, with an 8 out of 10;

(h)     Mr. Castelluccio never received any progressive discipline pursuant to IBM's custom and practice;

(i)     Ms. Collins-Smee failed to provide Mr. Castelluccio with any work assignments whatsoever following January of 2008, thereby making it nearly impossible for him to meet any performance standards during that time; and

(j)     Ms. Collins-Smee made only two inquiries on Mr. Castelluccio's behalf regarding available executive-level positions and did so just *one week* before providing him with notice of his impending termination, presumably at a time when a decision to terminate him already had been made.

51.     IBM's actions as set forth herein justify an award, inter alia, of back pay, reinstatement or front pay, liquidated damages, attorney's fees and benefits against IBM.

15

**Count Two**  *(Retaliation in Violation of ADEA)*

52.     IBM's actions in terminating Mr. Castelluccio's employment were retaliatory on account of his complaint alleging a violation of the provisions of the ADEA, 29 U.S.C. §§ 621, et seq., and violated his rights secured by 29 U.S.C. § 623 (d) of the ADEA and section 15 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 215, prohibiting retaliation.

53.     Mr. Castelluccio opposed treatment that he perceived as age discrimination in a complaint made to Mr. Walker, an IBM human resources professional whose job it was to investigate and resolve such complaints.

54.     Mr. Castelluccio made age discrimination complaints to Mr. Walker in writing on February 15, 2008 and orally on February 29, 2008 and March 4, 2008.

55.     Mr. Castelluccio was notified on or about May 20, 2008—less than three months after his final discussion with Mr. Walker—that a severance package had been prepared for him with a date of termination of June 30, 2008.

56.     Mr. Castelluccio requested that a formal investigation into the circumstances of his termination be initiated by IBM on or about June 23, 2008.

57.     Mr. Castelluccio's employment was terminated on June 30, 2008.

16

58.     A causal connection exists between Mr. Castelluccio's termination and his engagement in protected activity under 29 U.S.C. § 623(d), as demonstrated in part by the short period of time between Mr. Castelluccio's opposition of illegal discriminatory practices and the notification of his impending termination.

59.     IBM's actions as set forth herein justify an award, <u>inter alia</u>, of back pay, reinstatement or front pay, liquidated damages, attorney's fees and benefits against IBM.

**Count Three** *(Age Discrimination in Violation of NYSHRL)*

60.     IBM's actions in terminating Mr. Castelluccio's employment were wilful, unlawful and discriminatory on account of his age in violation of the provisions of NYSHRL § 296(a).

61.     As a result of IBM's actions, Mr. Castelluccio suffered from severe emotional distress.

62.     IBM's actions as set forth herein justify an award, <u>inter alia</u>, of back pay, reinstatement or front pay, emotional distress and other compensatory damages, attorney's fees and benefits against IBM.

17

**Count Four** *(Retaliation in Violation of NY Human Rights Law)*

63.    IBM's actions in terminating Mr. Castelluccio's employment were retaliatory on account of his complaint alleging a violation of the provisions of NYSHRL § 296(a), and violated his rights secured by NYSHRL § 296(d), prohibiting retaliation.

64.    As a result of IBM's actions, Mr. Castelluccio has suffered from severe emotional distress.

65.    IBM's actions as set forth herein justify an award, <u>inter alia</u>, of back pay, reinstatement or front pay, emotional distress and other compensatory damages, attorney's fees and benefits against IBM.

PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests this Court to enter:

(a)    A judgment declaring that Defendant discriminated against Plaintiff in violation of 29 U.S.C. §§ 621-634, 29 U.S.C. § 215(d) and NYSHRL §§ 296(a) and (d) and 29 U.S.C. § 215(d);

(b)    A money judgment representing compensatory damages, including lost wages, and all other sums of money, including retirement benefits and other employment benefits;

(c)    A money judgment representing liquidated damages for Defendant's willful violations of the ADEA;

(d)    A money judgment representing interest on this Court's award from the date of Plaintiff's termination until the date of payment on a compound basis;

18

(e)     A money judgment representing compensatory damages for emotional distress pursuant to Defendant's violations of NYSHRL §§ 296(a) and (d);

(f)     An Order directing Defendant to reinstate Plaintiff or, in the alternative, front pay for seven (7) years;

(g)     A money judgment to recoup any tax loss suffered by Plaintiff as a result of receiving a lump sum award;

(h)     That the Court retain jurisdiction over this action until Defendant has fully complied with the Orders of this Court and that the Court require Defendant to file such reports as may be necessary to supervise such compliance;

(i)     The costs of suit, including an award of reasonable attorneys' fees pursuant to 29 U.S.C. §§ 626(b) and 216(b); and

(j)     Such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands trial by jury of all questions of fact raised in this action.

Dated at Darien, Connecticut this 20th day of July, 2009.

THE PLAINTIFF
JAMES CASTELLUCCIO

BY: _____

MARK R. CARTA (ct06645)
KATHRYN A. SHERMAN (ct25641)
Rucci, Burnham, Carta & Carello, LLP
30 Old Kings Highway South
Post Office Box 1107
Darien, Connecticut 06820
(203) 899-3332 (Phone) (203) 655-4302 (Facsimile)
mcarta@rucciburnham.com
ksherman@rucciburnham.com

20