UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES CASTELLUCCIO,<br><br>                   Plaintiff,<br><br>      -   against –<br><br><br><br>INTERNATIONAL BUSINESS MACHINES<br>CORPORATION,<br><br>               Defendant. | CIVIL ACTION NO.<br>3:09 CV 1145 (DJS)<br><br><br><br><br><br>November 15, 2010 |

### DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO PRECLUDE EXPERT TESTIMONY OF DR. CHARLES SODIKOFF

Plaintiff's Motion to preclude the testimony of Dr. Charles Sodikoff, IBM's expert on job search and employability, in fact does not seek to preclude Dr. Sodikoff's testimony, but to limit it.  Plaintiff concedes that:

- Dr. Sodikoff is a qualified expert witness on employability and job search activity. (Mot. at 2.)[1]

- Dr. Sodikoff is qualified to testify to what constitutes a "diligent job search".  (*Id.*)

Plaintiff does not argue that testimony concerning what constitutes a "diligent job search" should be excluded as unreliable or irrelevant under *Daubert*.

Instead, Plaintiff seeks to prevent Dr. Sodikoff from expressing an opinion on two specific subjects: (1) whether Plaintiff's job search was reasonable or diligent; and (2) that if

---

[1] "Mot. at __" refers to Plaintiff's Motion to Preclude Proposed Expert Testimony of Dr. Charles Sodikoff, filed on September 20, 2010.

Plaintiff had engaged in a reasonable and diligent job search, he would have found comparable employment within a period of 9-18 months.  (Mot. at 2)  Both conclusions follow directly from testimony that Plaintiff admits is unobjectionable and admissible.  The artificial limits Plaintiff seeks are supposedly justified by one decision of a New York federal judge a decade ago that has been rejected by other judges.  Plaintiff's Motion should be denied.

## ARGUMENT

I.      PLAINTIFF'S MOTION IS UNFOUNDED AND SHOULD BE DENIED.

   A.    Dr. Sodikoff's Conclusion That Plaintiff's Job Search Efforts Were Not Diligent Is Admissible.

The sole basis upon which Plaintiff seeks to preclude Dr. Sodikoff from expressing an opinion on how Plaintiff's job search efforts fell short of what would be expected in a diligent search is a 2000 opinion by Judge Sweet, *Roniger v. McCall*, No. 97 Civ. 8009(RWS), 2000 WL 1191078 (S.D.N.Y. Aug. 22, 2000).  In *Roniger*, however, Judge Sweet held that Dr. Sodikoff was precluded only from drawing a final conclusion as to whether the plaintiff's efforts to find employment were "reasonable", concluding that use of this single term invaded the province of the jury.  2000 WL 1191078 at *5.  Significantly, Judge Sweet explicitly held that Dr. Sodikoff could testify "regarding matters such as: the nature and degree of efforts which typify an average or successful job search . . . and how [the plaintiff's] efforts compare to what are typical-or successful-efforts."  *Id*.  That is exactly the substance of the testimony that Dr. Sodikoff would present in this case, whether using the term "reasonable" or not.

Significantly, court after court has refused to follow *Roniger* and have allowed Dr. Sodikoff to testify exactly as proposed here, each concluding that expert opinion as to how a plaintiff's job search efforts were lacking is not invading the province of the jury at all.   In a 2009 decision, *Gabel v. Richards Spears Kibbe & Orbe, LLP*, No. 07 Civ. 11031, 2009 WL 1856631, at *3 (S.D.N.Y. June 26, 2009), Judge McMahon denied plaintiff's motion to preclude Dr. Sodikoff from testifying, premised upon *Roniger*, and allowed Dr. Sodikoff to render the type of opinion proposed in this case.   Judge McMahon concluded that "[e]xperts often testify about ordinary practice in an industry, in order to assist jurors in evaluating someone's conduct against that standard . . . An ordinary lay person would not necessarily be informed about what a successful job search consists of". 2009 WL at *4.   She specifically stated that "the jury will be advised about [the legal] standard [for mitigation of damages] and instructed to apply it to Dr. Sodikoff's testimony concerning *the reasonableness of Plaintiff's job search.*" *Id.*, at *3 (emphasis added).  *See also Baragona v. Kuwait Gulf Link Transport Co.*, 691 F. Supp. 2d 1346 (N.D. Ga. 2007) (allowing Dr. Sodikoff to testify regarding damages as "an expert on career management"), *vacated on other grounds*, 691 F. Supp. 2d 1351 (N.D. Ga. 2009); *Lauria v. Connecticut Natural Gas Corp.*, No. X03CV980486999S, 2003 WL 21299424 (Conn. Super. May 22, 2003) (allowing Dr. Sodikoff to testify regarding the amount of time it should have taken the plaintiff to find a comparable-paying position).

Not only is *Roniger* an outlier, but Judge Sweet's conclusion seemingly ignores Fed. R. Evid. 704(a), which Plaintiff admits specifically states that expert testimony "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."  Fed. R. Evid. 704(a). Expert testimony can certainly include factual conclusions, even "though they embrace an

ultimate issue to be decided by the jury", so long as they do not "encroach upon the court's duty to instruct on the law."  *U.S. v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (admitting expert testimony where the expert did not give his opinion as to whether securities laws had been violated).

Plaintiff argues that because Dr. Sodikoff uses the word "diligent" in his report, he has rendered an impermissible legal conclusion.  The law is clear, however, that simply using a word or term that is part of a legal standard does not *per se* render the testimony defective.  *U.S. v. Two Eagle*, 318 F.3d 785, 792 (8th Cir. 2003) ("[t]estimony is not defective merely because it utilized the words of the legal standard.  Commonly used words and their plain meaning often match their legal meaning."); *see also Allen v. City of New York*, 466 F. Supp. 2d 545, 549 (S.D.N.Y. 2006) (allowing expert testimony that characterized the party's actions as done "purposely", because this was not a case where the expert tracked the exact language of statutes and regulations using judicially defined terms, and that the "question of whether an individual acted deliberately is a factual one.") (citation omitted). [2]

---

[2] Plaintiff's cases do not support a contrary result.  In *Hygh v. Jacobs*, 961 F.2d 359 (2d Cir. 1992) (Mot. at 11), for example, the expert provided a definition of "deadly physical force" that directly tracked New York's penal law and used terms that overtly characterized the party's actions in legal terms.  Similarly, in *U.S. v. Scop*, 846 F.2d 135 (2d Cir. 1988) (Mot. at 10), the expert's opinion repeatedly used statutory and regulatory language in order to indicate guilt, and thus was precluded because it stated a legal conclusion.  Dr. Sodikoff did nothing of the sort, and here simply concluded that, in his expert opinion, Plaintiff's job search was not diligent or designed for success.  In *Berk v. Bates Adver. USA, Inc.*, No. 94 Civ. 9140, 1998 WL 726030, at *4 (S.D.N.Y. Oct. 14, 1998) (Mot. at 11), the court preemptively excluded the expert's opinion only insofar as he may conclude that the plaintiff's efforts to find employment were not "reasonable", even though such an opinion was not included in the expert report.  Here, the opinion that Plaintiff is trying to exclude is directly set forth in Dr. Sodikoff's report and it is clear that he does not intend to opine on whether Plaintiff engaged in reasonable efforts to

Dr. Sodikoff's testimony that Plaintiff's job search did not conform to the standards for a reasonable or diligent job search would not instruct the jury on whether the Plaintiff failed to mitigate his damages because he did not "use reasonable diligence in finding other suitable employment which need not be comparable to [his] previous position". *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 53 (2d Cir. 1998) *citing Ford Motor Co. v. EEOC*, 458 U.S. 219 (1982). Dr. Sodikoff's expert opinion instead will assist the jury by explaining the hallmarks of what industry experts consider a diligent job search – testimony that Plaintiff has conceded is not objectionable – and how Plaintiff's efforts compared to that standard. As Judge McMahon concluded in *Gabel*, *supra*, the requirements of a successful job search are not within the ordinary knowledge of a lay person, and it follows that there is no invasion of the province of the jury in explaining why Plaintiff's job search efforts were lacking. Indeed, if an expert can explain what an appropriate job search is, and discuss each component of an appropriate job search – which Plaintiff admits Dr. Sodikoff is qualified and entitled to do – it makes no sense to prevent him from commenting on the flaws in Plaintiff's efforts.

Whether Dr. Sodikoff uses the words "reasonable" or "diligent" in his opinion is not the vital issue; the vital issue is whether he is entitled to compare Plaintiff's job search efforts to what he, as an expert, defines as a diligent search, and then state a conclusion. Dr. Sodikoff's conclusion that Plaintiff had not conducted a diligent job search does not instruct the jury that Plaintiff's efforts here were not "reasonable" as a matter of law, but rather opines on an issue of fact – how Plaintiff's job search efforts were lacking – which is permissible under Federal Rule

---

mitigate his damages, but rather how Plaintiff's job search efforts compared to the industry standard for a diligent job search.

of Evidence 704(a).  Plaintiff's effort to preclude Dr. Sodikoff from using certain specified words in his testimony should be rejected.[3]

> B.    Dr. Sodikoff's Conclusion Concerning the Probable Length of a Reasonable Job Search is Reliable and Is Admissible.

For much the same reason, Plaintiff's claim that Dr. Sodikoff should be precluded from testifying that had Plaintiff performed a diligent job search, he would have found employment within 9-18 months, should be rejected.  (Mot. at 18, 20.)  Once again, it is important to bear in mind that the Plaintiff has admitted that Dr. Sodikoff can testify as to the elements of a reasonable job search.  Dr. Sodikoff surely can also testify about statistical data regarding the normal length of a job search by comparably situated executives.  Plaintiff nonetheless would have the Court preclude Dr. Sodikoff from testifying, based upon his extensive experience and relevant statistics, about what might have happened if Plaintiff had conducted a diligent job search.

---

[3] Even if Your Honor were inclined to follow *Roniger*, it is significant to note that Dr. Sodikoff changed his methodology after that case.  Dr. Sodikoff has testified that his conclusions are based on his extensive experience and that of several large outplacement firms.  The entire framework of Dr. Sodikoff's expert report bears out this approach:  "I have reviewed the job search training manuals of most of the major outplacement firms in this country . . . *Based upon standards identified by these experts in the field of job search as confirmed by my extensive experience*, the following is a description of the characteristics of a diligent job search."  (Pl Ex. A at 2 (emphasis added)).  This distinction (from merely telling the jury what to legally conclude) is an important one and one that Dr. Sodikoff incorporated into his work post-*Roniger*:  "I do remember, because it has come up any number of times, that . . . what was said was that I could present – I [was] fully [an] expert in presenting what a diligent job search was.  I was fully [an] expert in looking at Mr. [Roniger's] job search efforts and talking about his job search efforts and comparing them to the standards, which is what I learned from [*Roniger*], comparing to [the] standards of what a job search is."  Sodikoff Dep. 88 (attached as Exhibit A to this Memorandum).  That is exactly what Dr. Sodikoff has done here.

There is simply no reason to preclude Dr. Sodikoff's expert testimony about how long a successful and diligent job search should have taken, any more than it makes sense to exclude medical expert testimony about how long a plaintiff would have lived if he or she received appropriate medical treatment.  In both situations, an expert is testifying based upon experience in the field, and presenting testimony that is both helpful to the jury and outside the realm of common experience. Contrary to Plaintiff's claims, Dr. Sodikoff's opinion has a more than reasonable foundation and clearly passes the test for admissibility.  *See Gabel*, 2009 WL 1856631 at \*4 (finding that Dr. Sodikoff's testimony, based on his "professional experience", does not run afoul of *Daubert*).

Indeed, as this Court has held, where (1) an expert is qualified to testify in the area at issue and (2) the expert has applied long established principles within the relevant subject area when preparing his or her report, a court will have fulfilled its gate-keeping duties to keep "junk science" out of the courtroom in admitting the evidence.  *See Dunn v. Zimmer, Inc.*, No. 3:00CV1306 (DJS), 2005 WL 563096, at \*1 (D. Conn. Mar. 4, 2005).  Here, Plaintiff does not challenge Dr. Sodikoff's qualifications to testify as an expert witness in this case.  How then can he seek to preclude Dr. Sodikoff from rendering an opinion based on his experience?  Unlike the cases Plaintiff relies upon, Dr. Sodikoff has not divined a novel or unprecedented theory or methodology, nor do this conclusions lack support outside of his "experience".  Dr. Sodikoff relied upon his extensive experience in employee placement, anchored by studies and statistics reviewed over the years, coupled with current Bureau of Labor Statistics data, Plaintiff's work

experience, skill set, and available job opportunities to reach his conclusion regarding the length

of a successful diligent job search.[4]

Nor does Judge Sweet's opinion in *Roniger* support such a result, as Plaintiff claims.

Here, Dr. Sodikoff used narrowly tailored statistics and his own experience in order to determine

the amount of time it would likely have taken Plaintiff to find comparable employment, had he

acted diligently.  In *Roniger*, Dr. Sodikoff only relied upon a nationwide study by Drake Beam

and Morin regarding the job search experience of all senior management level executive job

seekers across the country.  Here, however, Dr. Sodikoff used United States Department of

Labor's Bureau of Labor Statistics (BLS) duration of unemployment statistics for Management,

Professional, and Related Occupations (a sub-group that encompasses Plaintiff's occupation)

coupled with unemployment rates for the United States and New York metropolitan area (and his

---

[4] The cases to which Plaintiff cites do not offer any reasons to reject Dr. Sodikoff's opinion.  In *Dreyer v. Ryder Auto. Carrier Group, Inc.*, 367 F. Supp. 2d 413 (W.D.N.Y. 2005), a products liability case, the expert used his "experience" and "evaluation" to justify the use of an entirely novel formula (the "injury per exposure frequency rate") that the court could not find any reference to in any published case law (or even a discussion of "any similar concept, as evidence, proposed or admitted") not could the court find any reference to this novel formula "in any regulations promulgated by OSHA with respect to product safety or otherwise."  *Id.* at 445.  Obviously that is not the case here.  In *Lippe v. Bairnco Corp.*, 288 B.R. 678 (S.D.N.Y. 2003), a bankruptcy valuation case, the expert was described by the court as, for all intents and purposes, a hack.  Not only did he reject standard industry principles and methods in valuing the business while using theoretical "projections" and unsupported "impressions", but, when asked why his work did not comport with industry standards he replied that "he was not familiar with the writings of academics on business valuation", "he did not pay 'much attention' to differences in valuation approaches taken by investment bankers  . . . and academics . . . because he had his 'own approach and this is the way [he had] done it for 40 years", he was "'not in the practice of reading' publications on the valuation of business, although he [was] aware they exist[ed]", and he did not "care what authorities on valuation [said] or what the typical practice [was] in the investment banking field with respect to aspects of business valuation".  *Id.* at 689-691.  Again, Plaintiff has pointed to a disqualified expert who essentially made up his own formula that had no connection to industry standards and was totally ignorant of the accepted methods of others conducting the same kinds of analyses.

experience as a recruiter, discussed *infra*).  Dr. Sodikoff also provided information on available jobs in Plaintiff's field in Plaintiff's geographic area which also bears on Plaintiff's ability to find another position – information that was found especially helpful in *Berk*.  Pl. Ex. A at 8. [5]  If Plaintiff disagrees with Dr. Sodikoff's methods of linking national and local unemployment rates to related duration periods of unemployment, he is free to cross-examine Dr. Sodikoff regarding the methodology used to form his opinion.  Dr. Sodikoff's data, however, is tailored to Plaintiff's job category as well as local statistics for duration of unemployment purposes.  These statistics are by no means too general to be reliable.

Plaintiff further claims that Dr. Sodikoff relied on certain documents that he did not provide to Plaintiff's counsel nor mention in his report in forming this opinion.  This misstates Dr. Sodikoff's testimony.   Dr. Sodikoff, during his deposition, stated that his extensive experience and knowledge in the area of job placement has been informed by decades of review and study of pertinent industry studies, reports, and documents and that these have provided the background for his experience in the area of job placement.  *See e.g.*, Sodikoff Dep. 99 ("I didn't refer to any documents.  These are [things] that are in my memory and in documents that I have

---

[5] Plaintiff portrays Dr. Sodikoff's use of the "Management, Professional and Related Occupations" category as inherently unreliable because it encompasses different occupations. The use of statistics and categories, however, are the best means available to discern broader trends and estimates in these sorts of situations, and Dr. Sodikoff testified that although Plaintiff could have fallen into a number of different sub-categories,  it would not have made much difference in terms of the average amount of time it should have taken him to find a job, had he been diligently searching for one.  *See* Sodikoff Dep. 189-191.

referred to in the past.  So I didn't have to look at any specific document[s] in preparing this report.")[6]

Plaintiff's claim that Dr. Sodikoff's opinion is not sufficiently explained in his written report is of no moment.  Plaintiff's counsel explored in depth at Dr. Sodikoff's deposition the basis for his opinion that Plaintiff would have found a comparable position within 9-18 months had he performed a diligent job search.  *See e.g.,* Sodikoff Dep. 221-229.  When asked if he had factored the recession into his analysis, Dr. Sodikoff responded that he did factor this variable into his calculations, and explained in detail what role this played in the conclusions in his report. *See* Sodikoff Dep. 227-228.  Similarly, Dr. Sodikoff testified that he took Plaintiff's age into account in his conclusion that he should have been able to find a job in 9-18 months, and again explained in detail how he took that factor into account.  *See* Sodikoff Dep. 91-93.  Dr. Sodikoff was not required to quantify in his written report how he balanced every factor that might have led him to his conclusion, and of course his written report will not be submitted into evidence. Plaintiff fully and completely explored every factor that Dr. Sodikoff relied upon during his deposition, and the complaint that his written report is not sufficiently specific insofar as it does not mention the recession or Plaintiff's age is an empty critique.

---

[6] Dr. Sodikoff discussed documents created by Wright Associates and Drake Beam Morin in response to Plaintiff's counsel's questions regarding what information he had looked at in the past in order to develop his expertise in the area of executive recruiting (*see e.g.,* Sodikoff Dep. 99).  He testified that he did not review this data or rely on it specifically when drafting his report (see above).  Plaintiff sent a request for any documents relied upon by Dr. Sodikoff in putting together his report on September 14, 2010.  These were not previously requested nor encompassed in prior requests because Dr. Sodikoff did not specifically rely on such documents in preparing his report.  Regardless, on October 5, 2010, IBM provided provided the three requested documents to Plaintiff's counsel.

Finally, Plaintiff's claim that Dr. Sodikoff is wrong about how long it takes to find a new job is simply absurd.  Citing to a New York Times article written about a woman who was an internal auditor at Boeing (not a former IBM executive like Plaintiff), living in Washington State and currently unemployed, Plaintiff references a statement (attributed to the Labor Department) that, in August of this year, the average time unemployed for those 55 and older was slightly more than 39 weeks (approximately 9.75 months).  Significantly, no citation or back-up for this allegation is provided.  Dr. Sodikoff's extensive experience regarding the impact of age on a typical executive job search (*see* Sodikoff Dep. 106), based upon years of experience in the field, is hardly "wrong" or inadmissible based upon an uncorroborated allegation in a New York Times story.

II.     CONCLUSION

For the reasons set forth above, Defendant respectfully requests that Plaintiff's motion to preclude the proposed testimony of Dr. Sodikoff be denied.

Dated:  November 15, 2010                    Respectfully submitted,
        New York, New York

                                             PAUL, HASTINGS, JANOFSKY & WALKER
                                             LLP

                                   By:  _____/s/ Zachary D. Fasman_____
                                             Zachary D. Fasman (phv0899)
                                             Patrick W. Shea (ct07071)
                                             Sandi F. Dubin (phv03597)
                                             75 East 55th Street
                                             New York, NY  10022-3205
                                             Telephone:  (212)  318-6000
                                             Facsimile:  (212) 319-4090
                                             zacharyfasman@paulhastings.com
                                             patrickshea@paulhastings.com
                                             sandidubin@paulhastings.com

                                             Counsel for Defendant
                                             INTERNATIONAL BUSINESS MACHINES
                                             CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2010, a copy of the foregoing Memorandum of Law in Opposition to Plaintiff's Motion to Preclude Proposed Expert Testimony of Dr. Charles Sodikoff was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

_____/s/ Zachary D. Fasman_____
Zachary D. Fasman (phv0899)