UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES CASTELLUCCIO, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 3:09CV1145 (DJS) |
| | : | |
| INTERNATIONAL BUSINESS | : | |
| MACHINES CORPORATION, | : | |
|     Defendant. | : | |

RULING ON MOTIONS

The plaintiff, James Castelluccio ("Castelluccio"), brings this action against the defendant, International Business Machines Corporation ("IBM"), alleging unlawful termination on the basis of age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §621, *et seq.*, and the New York State Human Rights Law ("NYSHRL"), NY CLS Exec § 296(a). Now pending before the Court are the plaintiff's motion to preclude proposed expert testimony of Dr. Charles Sodikoff  and the defendant's motion to exclude testimony of Dr. Gary Crakes.  For the reasons stated below, the plaintiff's motion to preclude (doc. # 46) is GRANTED in part and DENIED in part, and the defendant's motion to exclude (doc. # 50) is GRANTED in part and DENIED in part.

STANDARD

Pursuant to Fed. R. Evid. 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

A court's inquiry concerning the admissibility of expert testimony concerns three issues: "(1) whether the witness is qualified to be an expert; (2) whether the opinion is based upon reliable data and methodology; and (3) whether the expert's opinion on a particular issue will assist the trier of fact." *Arista Records LLC v. Lime Group LLC*, No. 06 CV 5936 (KMW), 2011 U.S. Dist. LEXIS 47416, at *6  (S.D.N.Y. May 2, 2011) (citing *Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005)). "While the proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied, the district court is the ultimate 'gatekeeper' . . . [and] [t]he Federal Rules of Evidence assign to it the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (internal quotation marks and citations omitted).

## A.  PLAINTIFF'S MOTION TO PRECLUDE

The defendant designated Charles L. Sodikoff, Ph.D. as its expert "in the area of mitigation of damages, and specifically concerning job search activity and employability." (Doc. # 46-1, at 2.) In a report submitted to the defendant, Dr. Sodikoff reached the following two conclusions: "1. Since leaving IBM at the end of June, 2008, Mr. Castelluccio has not conducted a diligent pursuit of full-time, permanent employment opportunities to find a job to replace the one he lost. 2. Had Mr. Castelluccio chosen to conduct a diligent job search since he left IBM, he would have found an appropriate, comparable position within his areas of skill and work experience within 9-18 months." (*Id.* at 6.)

The plaintiff does not challenge Dr. Sodikoff's qualifications as an expert, and the plaintiff acknowledges that "an employee who has been subject to discriminatory discharge is

required to mitigate his damages." (Doc. # 46, at 12.) The plaintiff contends, however, that Dr. Sodikoff's conclusion that Castelluccio had not conducted a "diligent" job search should be excluded as a legal conclusion that the jury is capable of deciding on its own. The plaintiff further contends that Dr. Sodikoff's conclusion that Castelluccio should have found comparable employment within 9 to 18 months should be precluded on the ground that it is unreliable under the framework articulated by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

   1. Testimony That Castelluccio Had Not Conducted A "Diligent" Job Search

  In support of his contention that Dr. Sodikoff should not be permitted to testify that Castelluccio did not conduct a "diligent" job search, the plaintiff cites to the decision of the court in *Roniger v. McCall*, No. 97 Civ. 8009 (RWS), 2000 WL 1191078 (S.D.N.Y. Aug. 22, 2000) which also involved expert testimony from Dr. Sodikoff. In that case, the court concluded that "[i]t would not be proper for Sodikoff to testify as to whether Roniger's efforts to find comparable employment were 'reasonable' because this is an ultimate question in this case which is for the jury to decide based on all the evidence and this Court's instructions." *Id*. at *5. In reaching this conclusion, the court noted that while Fed. R. Evid. 704(a) provides that an opinion "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact[1]," the Advisory Committee Notes to Rule 704(a) "caution that the provisions of Rule 704(a) 'do[] not lower the bar so as to admit all opinions' . . . [and] observe that . . . 'opinions which would merely

---

[1] The language of Fed. R. Evid. 704 was amended in 2011. That Rule now provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." The Notes of the Advisory Committee clearly state that "[t]hese changes are intended to by stylistic only. There is no intent to change any result in any ruling on evidence admissibility."

tell the jury what result to reach' are not admissible. *Roniger*, 2000 WL 1191078, at *4 (quoting Advisory Committee Notes to Rule 704(a)). The *Roniger* court ruled that "Sodikoff will not be permitted to testify to conclusions contained in the Expert Report as to whether Roniger's job search was 'reasonable,' 'active and proper,' 'vigorous,' 'serious,' and the like." *Id.* at *5.

In opposing the plaintiff's motion in this regard, the defendant argues that "court after court has refused to follow *Roniger* and have allowed Dr. Sodikoff to testify exactly as proposed here . . . ." (Doc. # 68, at 3.) Despite the defendant's contentions, courts within the Second Circuit have consistently maintained that "[i]n evaluating the admissibility of expert testimony, this Court requires the exclusion of testimony which states a legal conclusion." *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994); *see also Muller-Paisner v. TIAA*, No. 03 Civ. 6265 (GWG), 2012 U.S. Dist. LEXIS 111785, at *28 (S.D.N.Y. Aug. 9, 2012) ("[W]hile an expert 'may opine on an issue of fact within the jury's province,' an expert 'may not give testimony stating ultimate legal conclusions based on those facts.'" (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991)); *Berk v. Bates Advertising USA, Inc.*, No. 94 Civ. 9140 (CSH), 1998 WL 726030, at *4 (S.D.N.Y. Oct. 14, 1998) (the court "would not permit [the defendant's expert] to express an opinion as to whether plaintiff's particular efforts to find employment were reasonable").

The parties are in agreement that "[v]ictims of employment discrimination are required to mitigate their damages." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 53 (2d Cir. 1998). In the case of a discharged employee, mitigation of damages requires" 'us[ing] reasonable diligence in finding other suitable employment' . . . ." *Id.* (quoting *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 (1982). The Court concludes that whether or not Castelluccio conducted a "diligent" job

search after his discharge "is an ultimate question in this case which is for the jury to decide based on all the evidence and this Court's instructions." *Roniger*, 2000 WL 1191078, at *5. For that reason Dr. Sodikoff will not be permitted to testify that Castelluccio did not conduct a "diligent" job search after his discharge from IBM.

As was the case in *Roniger*, Dr. Sodikoff will be permitted to provide testimony concerning Castelluccio's job search. "It is proper for Sodikoff to do so to the extent that his testimony offers information that is relevant to the issue of [the plaintiff's] mitigation and that lies outside the knowledge of a layperson." *Id.*  This testimony may include "the nature and degree of efforts which typify an average or successful job search, . . . and how [the plaintiff's] efforts compare to what are typical–or successful–efforts." *Id.* The Court notes that the defendant has represented to the Court that Dr. Sodikoff "does not intend to opine on whether Plaintiff engaged in reasonable efforts to mitigate his damages, but rather how Plaintiff's job search efforts compared to the industry standard for a diligent job search." (Doc. # 68, at 4-5 n. 2.) The Court believes that this ruling will permit the defendant's expert to compare Castelluccio's job search efforts to an industry standard for such job searches without substituting the expert's judgment for that of the jury.

### 2.  Testimony That Castelluccio Should Have Found Comparable Employment Within 9 to 18 Months

The plaintiff suggests that Dr. Sodikoff's opinion as to when Castelluccio should have found comparable employment is not reliable, as was found to be the case with similar testimony in *Roniger*. There, the court found "several problems with the reliability of Sodikoff's opinion as to how long it should have taken [the plaintiff] Roniger to find comparable work." *Roniger*, 2000

WL 1191078, at *3.  These problems included "the statistical data he cites [being] too general to render his opinion reliable," and a failure to provide an adequate explanation of the method or theory he used to arrive at his opinion. *Id.* The defendant counters that Dr. Sodikoff's opinion as to when Castelluccio should have found comparable employment is appropriate expert testimony based on "statistical data regarding the normal length of a job search by comparably situated executives." (Doc. # 68, at 6.)

In order to fulfill its gatekeeping duties with regard to expert testimony, the trial court "must ensure that any and all scientific [technical, or other specialized] testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589.  While *Daubert* identified some specific factors which the trial court may consider in determining reliability, e.g., testing, peer review, rate of error, and acceptance within the relevant field, the Supreme Court also indicated that "[t]he inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity - - and thus the evidentiary relevance and reliability - - of the principles that underlie a proposed submission." *Id.* at 594-95. "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999).

The plaintiff contends that Dr. Sodikoff's opinion as to how long it should have taken Castulluccio to find comparable employment is no more reliable than the opinion the court found not reliable in *Roniger*. The defendant argues that there is a distinction between Dr. Sodikoff's opinion in this case and that in *Roniger.* "Here, Dr. Sodikoff used narrowly tailored statistics and his own experience in order to determine the amount of time it would likely have taken Plaintiff

to find comparable employment, had he acted diligently." (Doc. # 68, at 8.)

One concern expressed by the court in *Roniger* was that the statistical data Dr. Sodikoff relied upon to form his opinion "concern[ed] 'senior management and executive' job seekers as a whole without distinguishing as to their field. Roniger is an economist. In order to be reliable, Sodikoff's opinion as to when Roniger should have found comparable work should be based on information that is pertinent to Roniger's field." *Roniger*, 2000 WL 1191078, at *3. This Court has a similar concern about the statistical data Dr. Sodikoff relied upon to form his opinion as to how long it should have taken Castelluccio to find comparable work. Castelluccio was an IBM Vice President at the time of his termination in 2008.  Dr. Sodikoff's report indicates that for the year 2007, Castelluccio's base salary was $204,000, and that he earned an additional incentive bonus of $44,550 that year. (Doc. # 46-1, at 6.)  In his report, Dr. Sodikoff specifies that he relied upon data from the U.S. Department of Labor's Bureau of Labor Statistics concerning "Management, Professional and Related Occupations" job seekers. (*Id*. at 14.) At his deposition, Dr. Sodikoff testified that the "Management, Professional and Related Occupations" category would include lawyers, dentists, doctors, and "should" also include dental hygienists and paralegals. (Doc. # 46-3, at 31, lines 11-22.) He also acknowledged that a different category "may have been" a "more accurate designation of [Castelluccio's] occupation . . ." (*Id.* at 32, lines 2-7.) Dr. Sodikoff further acknowledged that the occupational categories he utilized in forming his opinion did not differentiate between employees at different compensation rates, and that it was "certainly possible" that the "Management, Professional and Related Occupations" category "would lump together, for example, a 65,000 dollar a year dental hygienist with a CEO of a Fortune 500 or 100 company making 20 or 30 times that compensation[.]" (*Id.* at 36, lines 8-16.)

"In order to be reliable, Sodikoff's opinion as to when [Castelluccio] should have found comparable work should be based on information that is pertinent to [Castelluccio's] field." *Roniger*, 2000 WL 1191078, at *3. The Court does not agree with the defendant that Dr. Sodikoff's opinion is based on "statistical data regarding the normal length of a job search by comparably situated executives." (Doc. # 68, at 6.) The Court concludes instead that the statistical data Dr. Sodikoff relied upon to form his opinion as to when Castelluccio should have found comparable employment was not sufficiently pertinent to Castelluccio's field to be considered reliable.

Castelluccio was 61 years old at the time of his termination. Dr. Sodikoff testified at his deposition that when he was making a determination as to the length of time it should have taken Castelluccio to find comparable work, he "made a determination that I needed to add a little bit of more time for age and I added more time because of the income level of Mr. Castelluccio." (Doc. 46-3, at 6, lines 4-7.) Dr. Sodikoff also testified that "the data that I am familiar with, very familiar with, in terms of age and its relationship to job search is that it can, in certain circumstances, have an impact of the length of job search and the impact that I've seen is a matter of typically a matter of weeks, maybe three to four weeks of additional job search time. I've never seen it longer than six weeks impact on job search." (*Id.* at 5, lines 6-14.)

Although Dr. Sodikoff testified that he "needed to add a little bit of more time for [Castelluccio's] age," (*id.* at 6, lines 4-5) there is no mention in Dr. Sodikoff's report of age, or income level, as a factor in determining how long it should have taken Castelluccio to find comparable employment. The Court cannot discern from that report how Dr. Sodikoff factored Castelluccio's age or income level into his conclusion that Castelluccio should have found

comparable employment within 9 to 18 months. "'Nothing in either *Daubert* or the Federal Rules

of Evidence requires a district court to admit opinion evidence that is connected to existing data

only by the *ipse dixit* of the expert.'" *Amorgianos v. Amtrak*, 303 F.3d 256, 266 (2d Cir. 2002)

(quoting *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)). As was the case in *Roniger*,

the Court concludes that "there is simply too great an 'analytical gap' between the data and the

opinion proffered for the opinion to be reliable." *Roniger*, 2000 WL 1191078, at *4 (internal

quotation marks omitted) (quoting *Joiner*, 522 U.S. at 146).

### B. DEFENDANT'S MOTION TO EXCLUDE

Gary M. Crakes, Ph.D. has been designated as the plaintiff's expert on the issue of

"economic loss of earning capacity" resulting from the plaintiff's termination at IBM. (Doc. #

50-2, at 6.) In his report, submitted to plaintiff's counsel on or about March 17, 2010, Dr. Crakes

calculated a "past economic loss" of $576,230. (*Id.*) This total figure consists of $357,000 in past

loss of salary, $82,539 in past loss of incentive compensation, and $136,691 in past loss of the

exercise of stock options. (*Id.*) Dr. Crakes further calculated a "future discounted economic loss"

of $924,990, consisting of $573,073 in future discounted loss of salary, $132,495 in future

discounted loss of incentive compensation, and $219,422 in future discounted loss of the value of

the exercise of stock options. (*Id.*) Dr. Crakes opined that "the past plus future net discounted

economic loss in this case, after adjustment of the capital fund for the quarterly payment of

interest[2], is approximately $1,481,000." (*Id.* at 7.)

The defendant does not challenge Dr. Crakes's qualifications as an expert. Rather, the

---

[2]This adjustment reduced the total amount of economic loss calculated by Dr. Crakes by $20,000. (*Id*. at 8.)

defendant argues that the testimony of Dr. Crakes should be excluded because his opinion as to economic loss: (1) fails to take interim earnings, or amounts earnable through reasonable diligence, into account in any way; and (2) includes amounts attributable to the loss of the exercise of stock options as to which there is no factual foundation.

## 1. Interim Earnings

The defendant maintains that Dr. Crakes's opinion concerning Castelluccio's economic loss is unreliable, and consequently should be excluded, because it fails to reduce the economic loss in order to take into account Castelluccio's duty to mitigate his damages. The plaintiff responds that the defendant's argument goes to the weight to be given Dr. Crakes's testimony, not to its admissibility.

There can be no doubt that "[v]ictims of employment discrimination are required to mitigate their damages." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47,53 (2d Cir. 1998); *see also Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728 (2d Cir. 1984) (an ADEA plaintiff has a "duty to mitigate damages by seeking employment elsewhere . . . ."). However, "[w]hile it is the plaintiff's duty to mitigate, it is the defendant who has the evidentiary burden of demonstrating at trial that a plaintiff has failed to satisfy this duty." *Dailey v. Societe Generale*, 108 F.3d 451, 456 (2d Cir. 1997).

Recognizing that it is the defendant's evidentiary burden to demonstrate failure to mitigate, the Court does not find Dr. Crakes's testimony inadmissible solely for the reason that his calculation of economic loss did not address the mitigation issue. "As the Supreme Court has explained, 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but

admissible evidence.'" *Amorgianos*, 303 F.3d at 267 (quoting *Daubert*, 509 U.S. at 596).

Between cross-examination of the plaintiff's expert and the testimony of its own expert, the

defendant should have the necessary tools to go forward with its burden of demonstrating failure

to mitigate.

### 2. Stock Options

The defendant's second argument centers on Dr. Crakes's inclusion in Castelluccio's total

economic loss of amounts associated with the exercise of stock options. According to the

defendant, there is no factual foundation that would warrant the inclusion of such amounts in the

loss calculation, and this method of valuation would be severely prejudicial if placed before a

jury. The plaintiff counters that Dr. Crakes properly calculated the value of Castelluccio's

"expected stock options" on the basis of IBM's past practices. (Doc. # 72, at 4.)

In his report, Dr. Crakes indicates that his calculation of economic loss is based in part on

"20004 to 2009 mean annual net value for the exercise of stock options of $78,109." (Doc. # 50-

2, at 6.) At his deposition, Dr. Crakes agreed that he "averaged the amount [Castelluccio] earned

through exercising the options during that period [2004-2009] by the number of years in

question." (Doc. # 50-3, at 6, lines 5-9.) In essence, Dr. Crakes arrived at a "mean annual net

value" of $78,109 for the exercise of stock options between 2004-2009 and applied that annual

net value to the 4.67 years of "work-life " from the time of Castelluccio's termination at the age

of 61 until he turned 66. (Doc. # 50-2, at 9.)

Dr. Crakes acknowledged at his deposition that Castelluccio exercised no stock options

during the years 2004, 2005, and 2006. (Doc. # 50-3, at 5, lines 4-5.) Although Dr. Crakes's

calculation "assumes that [Castelluccio] would receive options in the fashion as he had for those

six years prior to the cessation of his employment," (*id*. at 12, lines 17-19), he did not know whether IBM offered stock options to its executives in 2010 or 2009. *(Id.* at 12, lines 20-25.)  Dr. Crakes also did not know the basis upon which IBM offered stock options to its executives, (*id.* at 13, lines 1-3), and had made no inquiry as to how IBM grants stock options to its executives. (*Id.* at 16, lines 2-7.)

In carrying out its gatekeeping responsibilities, a trial court "must determine whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered." *Amorgianos*, 303 F.3d at 265 (internal quotation marks omitted). While the Court can follow the methodology employed by Dr. Crakes to arrive at his conclusions regarding the exercise of stock options, the Court finds that methodology inadequate to support the conclusions reached. The Court agrees with the defendant that Dr. Crakes has not established a factual foundation that would validate his methodology of simply averaging stock option gains over a certain period and applying the result to future years[3].  Dr. Crakes's deposition testimony indicates that he had little knowledge of how or when stock options were offered to IBM executives. Since that methodology is "simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Id.* at 266.

"In addition to the requirements of Rule 702, expert testimony is subject to Rule 403, and

---

[3]In his opposition to the defendant's motion to exclude, the plaintiff argues that the Court should disregard two Declarations attached as exhibits to the defendant's motion, because "[n]either of these witnesses were disclosed by IBM in their initial Rule 26(a)(1) Disclosures or at any other time prior to the filing of the two declarations." (Doc. # 72, at 6.) The Court does not find it necessary to consider these submissions for the purpose of ruling on the defendant's motion. Nor does the Court find it necessary to hold a hearing in order to rule on either the plaintiff's or the defendant's motion. The parties have provided the Court with information and argument through their submissions relating to the two motions sufficient for the purpose of ruling on those motions.

'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (quoting Fed. R. Evid. 403[4]). "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (internal quotation marks omitted). In addition to the determination that Dr. Crakes's opinion regarding the exercise of stock options is not based upon a reliable methodology, the Court also finds that, given the lack of information Dr. Crakes had about the offering of stock options to IBM executives, the probative value of such testimony "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," *Nimely*, 414 F.3d at 397 (internal quotation marks omitted), and must be excluded for that reason as well.

CONCLUSION

For the foregoing reasons, the plaintiff's motion to preclude (**doc. # 46**) is **GRANTED in part and DENIED in part**. The defendant's expert, Dr. Charles Sodikoff, will not be permitted to testify that the plaintiff Castelluccio did not conduct a "diligent" job search after his discharge from IBM, but will be permitted to provide other testimony concerning Castelluccio's job search as indicated in his report. This testimony may include the nature and degree of efforts which

---

[4]The language of Fed. R. Evid. 403 was amended in 2011. That Rule now provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." As was the case with the 2011 amendment to Rule 704, the Notes of the Advisory Committee clearly state that "[t]hese changes are intended to by stylistic only. There is no intent to change any result in any ruling on evidence admissibility."

typify an average or successful job search and how Castelluccio's efforts compare to typical, or successful, efforts.

Dr. Sodikoff will also not be permitted to testify that Castelluccio should have found an appropriate, comparable position within his areas of skill and work experience within 9-18 months.

The defendant's motion to exclude (**doc. # 50**) is **GRANTED in part and DENIED in part**. The plaintiff's expert, Dr. Gary Crakes, will not be permitted to testify as to any past or future economic loss on the part of the plaintiff Castelluccio that is attributable to the exercise of stock options, but will otherwise be permitted to testify on the issue of economic loss resulting from Castelluccio's termination at IBM as indicated in his report.

**SO ORDERED** this 5th   day of November, 2012.

_____/s/ DJS_____
DOMINIC   J.   SQUATRITO
UNITED STATES DISTRICT JUDGE