UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**JAMES CASTELLUCCIO,**
      **- Plaintiff**
    **v.**                                         **CIVIL NO. 3:09CV1145(TPS)**

**INTERNATIONAL BUSINESS**
**MACHINES CORPORATION,**
      **- Defendant**

### Ruling on Plaintiff's Motion to Preclude Evidence

The plaintiff, James Castelluccio, alleges that the defendant, International Business Machines Corporations ("IBM"), terminated his employment on the basis of age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §621, *et seq*., and the New York State Human Rights Law ("NYSHRL"), NY CLS Exec § 196(a). The matter is set down for jury trial on January 13, 2014.

Now pending before the Court is the plaintiff's motion to preclude the introduction of evidence concerning the investigation conducted by IBM in response to Mr. Castelluccio's claim of age discrimination. See Doc. #154. The proposed evidence includes: the report of IBM's consulting human resources professional, Mr. Russell Mandel, which summarizes the findings of his "open door" investigation into Mr. Castelluccio's report of discrimination (Doc. #156-3); hand written notes prepared by Mr. Mandel during interviews with IBM employees (Doc. #156-2); and Mr. Mandel's testimony regarding the findings of the open door investigation (Doc. #133, at 11)(collectively, the "open door evidence"). For

the reasons stated below, Mr. Castelluccio's motion to preclude the open door evidence **(Doc. #154)** is **GRANTED**.

The facts and procedural history of this case are familiar to the parties, and the Court will not repeat them in depth. Mr. Castelluccio began work at IBM in March 1968. (Doc. #108, at 1-2). In November 2007, when Mr. Castelluccio was 60 years old, he was informed by his superior, Ms. Joanne Collins-Smee, that he was being replaced as Delivery Project Executive ("DPE") of IBM's Wellpoint account, effective, January 1, 2008. After being removed from this position, Mr. Castelluccio was considered to be "on the bench," that is, he remained employed by IBM at full pay but without a work assignment. (Id. at 4-5). During this period, Mr. Castelluccio engaged in a search to find a new position at IBM. On June 2, 2008, Ms. Collins-Smee met with Mr. Castelluccio to offer him a separation agreement and notified him that his termination would be effective on June 30, 2008, unless he found a new position within the company. Ultimately, Mr. Castelluccio was unable to secure another position, and his employment was terminated accordingly. He did not sign the separation agreement. (Id. at 6).

On June 13, 2008, after being presented with the separation agreement from Ms. Collins-Smee, but before his termination date, Mr. Castelluccio lodged a complaint of age discrimination with IBM. Thereafter, Mr. Mandel conducted the open door investigation into

Mr. Castelluccio's report of age discrimination.  Mr. Mandel concluded that IBM had treated Mr. Castelluccio fairly with regard to his termination, and informed Mr. Castelluccio of the findings of his investigation on August 11, 2009.  (Id. at 7).

Mr. Castelluccio now seeks to preclude admission of the open door evidence at trial on the basis that its probative value is far outweighed by its prejudicial effect and that it will confuse the jury and delay the proceedings.  IBM argues that the open door evidence is relevant and critically important to allowing the jury to understand its motive at the time of Mr. Castelluccio's termination, and that, in any event, it falls within the business records exception to the hearsay rule.  IBM states that it would not introduce the open door evidence for the purpose of proving the truth of its underlying facts, but to show that it carefully investigated Mr. Castelluccio's complaint of age discrimination and that, based upon that investigation, believed that his complaint was not true at the time.

The Federal Rules of Evidence ("F.R.E.") have long recognized the business records exception, Fed.R.Evid. 803(6)(b), to the hearsay doctrine, which permits the admission of documents containing hearsay provided there is a foundation sufficient to support its admission.  Courts have also held, albeit in the context of adjudicating dispositive motions, that human resource department investigations constitute business records under Rule

803(6). See, e.g., Brauninger v. Motes, 260 F. App'x 634, 637 (5th Cir.2007) (investigation notes were based on investigators' personal knowledge and were the result of a regularly conducted business activity that was an ordinary part of the investigators' duties as human resources managers); Mensez-Nouel v. Gucci Am., Inc., 10 CIV. 3388 PAE, 2012 WL 5451189 (S.D.N.Y. Nov. 8, 2012) aff'd on other grounds, 12-4896-CV, 2013 WL 5584317 (2d Cir. Oct. 11, 2013) (investigation report is a business record); O'Brien v. International Business Machines, Inc., No.06-4864 (FLW), 2009 WL 806541 (D.N.J. Mar. 27, 2009) (IBM's open door investigation is a business record). Moreover, even when an internal report does not meet the requirements of a business record, the court retains discretion to allow its admission for a legitimate non-hearsay purpose. Vahos v. Gen. Motors Corp., No. 06-cv-6783, 2008 WL 2439643, at *4 (E.D.N.Y. June 18, 2008) (holding that investigative report was admissible at summary judgment stage for the "non-hearsay" purpose of proving that the decision-makers who discharged plaintiff believed that he acted improperly).

Although the court might be able to conclude that open door evidence falls within the business records exception to the hearsay rule, or admit it for the limited purpose of allowing IBM to establish its motive for Mr. Castelluccio's termination, the court agrees with the plaintiff that the analysis should proceed yet further to determine whether the probative value of the open door

4

evidence exceeds its prejudicial effect.  See Fed.R.Evid. 403; see also, Paolitto v. John Brown E & C Inc., 151 F.3d 60, 64 (2d Cir.1998)(stating "the fact that evidence is within an exception to the hearsay rule does not by itself make it admissible *per se*," and, "[t]he district court generally has discretion to exclude hearsay on other grounds, such as where the evidence's probative value is substantially outweighed by the danger of unfair prejudice").

The prejudicial effect of the open door evidence is obvious. Although the open door investigation purports to have determined whether Mr. Castelluccio was treated fairly, it represents only the findings and conclusions of IBM, as opposed to Mr. Castelluccio's account of the circumstances surrounding his termination.  This was not an investigation conducted by a neutral party; rather, one conducted by Mr. Mandel, who selected whom to interview and what evidence to consider.  There was no hearing, no evidence offered, no sworn statements and no opportunity for Mr. Castelluccio to respond to the criticisms leveled against him, let alone conduct direct or cross-examination of witnesses.  Evidence that would have been favorable to Mr. Castelluccio is absent from Mr. Mandel's report.  It does not include Mr. Castelluccio's annual performance reviews, or indicate that Mr. Mandel interviewed Mr. Castelluccio's previous manager or clients for whom Mr. Castelluccio worked.

Moreover, the open door investigation focuses more on Mr.

Castelluccio's job performance than his claim of age discrimination. Much of the report concerns certain executives' estimation of Mr. Castelluccio's performance on two difficult customer accounts, as opposed to whether he was terminated because of his age. (Doc. #156-3). Consequently, the open door evidence, while purporting to make objective findings, not only offers an assessment of Mr. Castelluccio's job performance complicated with the biases identified above, but also minimizes his complaints of age discrimination.

There is also reason to suspect that the purpose of the investigation was more to exonerate IBM than to determine if Mr. Castelluccio was treated fairly. By Mr. Mandel's own admission, had Mr. Castelluccio signed the separation agreement releasing IBM from all legal liability, he would have discontinued his investigation.[1] Had the purpose of the open door investigation been truly to determine if an IBM employee was treated unfairly, the investigation would have been borne to its natural conclusion irrespective of the specter of litigation.

The court cannot admit evidence that would so unduly prejudice

---

[1] On June 30, 2008, Mr. Mandel stated in an email to Keith E. Holmes, Director of Human Resources-IT Delivery: "I told both [Mr. Castelluccio and Ms. Collins-Smee] that [Mr. Castelluccio] goes today, though I'm still investigating. If he signs the release, he gets the money, and I stop investigating, [i]f he does not sign the release, there are 2 paths: 1) I find in his favor and bring him back, or 2) I do not find in his favor, and will give him 48 hours to sign the release. If he then signs, he gets the money. If he doesn't sign, he doesn't get the money." (Doc. #157-2).

the plaintiff.  To the extent that IBM wishes to present evidence demonstrating its reasons for terminating Mr. Castelluccio's employment, it is free to introduce at trial the same evidence considered by Mr. Mandel.  For the reasons stated herein, Mr. Castelluccio's motion to preclude the open door evidence is **(Doc. #154) GRANTED.  IT IS SO ORDERED.**

    **Dated at Hartford, Connecticut this    23rd    day of December, 2013.**

                                           **/s/ Thomas P. Smith**
                                           **Thomas P. Smith**
                                           **United States Magistrate Judge**