### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

JAMES CASTELLUCCIO,
        – Plaintiff

    v.                              CIVIL NO. 3:09CV1145(TPS)

INTERNATIONAL BUSINESS
MACHINES CORPORATION,
        – Defendant

### Ruling on Plaintiff's Motion for Attorneys' Fees

Following a nine-day trial, the jury returned a verdict in favor of the plaintiff, James Castelluccio, on his claims under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., and the New York State Human Rights Law ("NYSHRL"), NY CLS Exec § 196(a), against the defendant, International Business Machines Corporation ("IBM"). Judgment in the amount of $999,891.64 for back pay and benefits, $999,891.64 for liquidated damages, and $500,000 for emotional distress damages has been entered. (Doc. #195). Castelluccio has filed a motion for an award of attorney's fees, prejudgment interest, and compensation for increased tax liability as a prevailing party under the ADEA.[1] See 29 U.S.C. § 626(b); (Doc. #197). Castelluccio has also filed a supplementary motion for attorneys' fees for work related to certain post-trial motions in this case. (Doc. #231).

For the reasons that follow, Castelluccio's motion for

---

[1] Castelluccio also seeks an award for costs incurred in this litigation. The court does not address Castelluccio's application for costs because it is premature and must be submitted to the clerk of court, not the court itself.

attorney's fees, prejudgment interest, and compensation for increased tax liability **[Doc. #197]** is **GRANTED in PART and DENIED in PART**.  Castelluccio is awarded $894,053.50 in attorneys' fees for work set forth in that motion.  Absent objection, he is awarded $13,236 in prejudgment interest, and $209,488 in compensation for increased tax liability.

Castelluccio's supplementary motion for attorneys' fees **[Doc. #231]** is **GRANTED**.  He is awarded $102,360.00 in attorneys' fees for work set forth in that motion.

## I. DISCUSSION

An award of attorneys' fees is mandatory to a prevailing party under the ADEA.  Hagelthorn v. Kennecott Corp., 710 F.2d 76, 86 (2d Cir. 1983) (Detje v. James River Paper Corp., 167 F. Supp. 2d 248, 250 (D. Conn. 2001)).  In determining an appropriate fee award, both the Second Circuit and the Supreme Court "have held that the lodestar-- the product of a reasonable rate and the reasonable number of hours required by the case-- creates a presumptively reasonable fee." Milea v. Metro-North R. Co., 658 F.3d 154, 166 (2d Cir.2011) (citing Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany, 522 F.3d 182 (2d Cir.2008); Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010)).  "'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar v. Hobby, 506 U.S. 103, 114 (1992), quoting Hensley v.

Eckerhart, 461 U.S. 424, 436, 103 S. Ct. 1993, 76 L. Ed. 2d 40 (1983).  The court notes at the outset that the jury found in favor of Castelluccio on every claim he advanced at trial, and that the jury verdict was left undisturbed by the court in its denial of IBM's motion for judgment as a matter of law, or new trial, or remittitur.  (Doc. #202).

In response to Castelluccio's motion for attorneys' fees (Doc. #197), IBM objects to four categories of activity that it believes should be excluded from Castelluccio's attorneys' fees calculation: (1) secretarial tasks and routine work; (2) abandoned claims, unsuccessful motions, and tasks unrelated to the outcome of the case; (3) tasks billed to two or more attorneys; and (4) work that has been "block" billed.  IBM objects also, on similar grounds, to: (5) Castelluccio's (Doc. #231) supplementary motion for attorneys' fees.  IBM does not contest the reasonableness of the hourly rate of Castelluccio's counsel.  The court addresses each category IBM identifies in turn.

## 1. Routine Legal Work and Secretarial Tasks

IBM first claims that the fees Castelluccio seeks for secretarial tasks and routine work is excessive.  It asks the court to deduct 4.4 hours of secretarial work from the attorneys' fee award and to also reduce by 50 percent the billable hours for the following work: 22.3 hours spent drafting the federal complaint; 25 hours spent negotiating a confidentiality agreement; 17.2 hours

spent drafting discovery requests; 272.30 hours spent drafting the response and sur-reply to IBM's motion for summary judgment; 4.4 hours spent preparing Castelluccio for a second deposition; and 1,054.70 hours spent preparing for trial.  Castelluccio claims that IBM's estimation of hours billed for many of these tasks is inaccurate and that the time actually billed was justified.

In instances where the record supports competing conclusions regarding the amount of time billed, the court affords the benefit of the doubt to Castelluccio.  This approach is supported by the presumption that the lodestar figure represents a reasonable fee and also by the courts' belief that Castelluccio's counsel, who has sworn to the accuracy of the billing statements, is in a better position than IBM to attest to the amount of time billed for certain tasks.  Accordingly, the court accepts the representation of counsel that he billed only 12.1 hours for negotiating a confidentiality agreement and only 240 hours to contest IBM's motion for summary judgment.  The expenditure of time to negotiate the confidentiality agreement was reasonable, especially in light of the fact that it required review of language proposed by IBM and was put in place for IBM's benefit.  The time billed to contest IBM's motion for summary judgment, which included a warranted sur-reply, was also reasonable.  See e.g., Serricchio v. Wachovia Sec., LLC, 706 F.Supp.2d 237, 258 (D.Conn.2010) aff'd, 658 F.3d 169 (2d Cir.2011) (294.25 hours of attorney time spent opposing motion for

summary judgment was reasonable).

The court also accepts Castelluccio's representation concerning the time he spent drafting discovery requests. The record reasonably supports Castelluccio's position that IBM has overestimated the amount of time he spent drafting discovery requests inasmuch as IBM's estimation includes time Castelluccio was billed for responding and objecting to IBM's requests for production, scheduling a settlement conference, participating in a conference call with a Magistrate Judge, and reviewing IBM's confidentiality agreement.  (Doc. #223-5).  The court therefore finds that the time Castelluccio was billed to respond to discovery requests was reasonable.

The court also accepts Castelluccio's representation that time for certain secretarial tasks was not billed by his attorneys.  The court has reviewed the entries in question, which include time spent drafting the federal complaint, reviewing the law and the court's ruling, and finds that these tasks do not amount to work that is secretarial in nature.  To the extent IBM identifies a time entry related to filing the complaint, the court accepts Castelluccio's representation that the time for that task was billed to a paralegal.

The court also disagrees with IBM's position that the time Castelluccio spent preparing for trial was excessive.  The court finds that IBM's estimate of the hours billed to Castelluccio for

trial preparation is overly broad.  Its estimate collects entries dating back to 11 months before trial and does not challenge any single entry with specificity.  (Doc. #223-8).  Accordingly, the court cannot conclude that the hours billed to Castelluccio for the purpose of trial preparation were excessive.

The court, however, agrees with IBM's position that a reduction of attorneys' fees is warranted for the time spent drafting the federal complaint in this case.  (Doc. #223-4).  The court finds that 22.3 hours for this task is excessive in light of the fact that the complaint was produced on the heels of litigation at the administrative level.  Accordingly, the court reduces attorneys' fees for this excessive work by $2,811.

The court also agrees with IBM's position that a reduction of attorneys' fees is warranted for time spent preparing Castelluccio for a second day of deposition.  While the court does not believe that Castelluccio acted in bad faith, it finds that a second deposition was induced to some extent by Castelluccio's failure to produce prior to the first deposition all documents related to his efforts to mitigate damages.  Accordingly, the court reduces attorneys' fees for the second day of Castelluccio's deposition by $792.50.

## 2. Abandoned Claims, Unsuccessful Motions, and Other Tasks

IBM next claims that Castelluccio should not be awarded attorneys' fees for certain abandoned claims and theories,

unsuccessful motions, and tasks unrelated to the outcome of the case.  A plaintiff who prevails on some but not all of his claims is not entitled to a fee award for unsuccessful claims that were based on different facts and different legal theories.  Hensley, 461 U.S. at 434, 103 S.Ct. 1933).  However, a plaintiff's lack of success on some of his claims does not require the court to reduce the lodestar amount where the successful and unsuccessful claims were interrelated and required essentially the same proof.  Murphy v. Lynn, 118 F.3d 938, 951 (2d Cir.1997), cert denied, 522 U.S. 1115, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998); Lunday; Grant v. Bethlehem Steel Corp., 973 F.2d 96, 101 (2d Cir.1992), cert. denied, 506 U.S. 1053, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993); DeLeon v. Little, No. 3:94CV902RNC, 2000 WL 435494, at *4 (D.Conn. Mar.2, 2000).

### A. Abandoned Claims and Theories

IBM specifically argues that Castelluccio should not be permitted to recover attorneys' fees for the following abandoned claims: (1) his claim that IBM allegedly breached an implied contract, which was abandoned before the complaint was filed; (2) his claim for retaliation, which was abandoned after the close of discovery; (3) his claim that IBM violated its progressive discipline policy; (4) his claim that his pension should not be used to offset his damages claim; (5) his efforts to introduce evidence of a coworker's earnings as evidence supporting his claim

7

for lost stock options; and (6) his failed application to amend the case management plan in order to designate a rebuttal expert.

With respect to Castelluccio's claims of breach of implied contract and retaliation, the court finds that these claims are factually interrelated to Castelluccio's claim of wrongful termination such that no reduction of fee is warranted. Dominic v. Consol. Edison Co. Of New York, Inc., 822 F.2d 1249, 1259 (2d Cir. 1987) ("[W]hen a plaintiff's claims for relief involve a common core of facts or are based on related legal theories, the lawsuit cannot be viewed as a series of discrete claims." (Internal quotations and brackets omitted)).  In addition, the court finds that those claims were reasonably viable legal theories that counsel had a duty to investigate.  To disallow attorneys' fees in this respect would serve only to discourage attorneys' from investigating all reasonable theories of recovery. See Marisol A. ex. re.. Forbes v. Guiliani, 111 F.Supp.2d 381, 393 (S.D.N.Y. 2000) ("Preventing . . . prevailing parties from recovering fees for unsuccessful efforts during the course of an otherwise successful litigation may discourage attorneys from zealously representing their clients and raising novel but reasonable arguments on their behalf.").  In any event, the court finds that time spent on these claims does not appear to be unreasonable, and notes that the claims were timely abandoned when Castelluccio determined they were not meritorious.  Accordingly, no reduction of attorneys' fees is

warranted for the abandoned claims of breach of implied contract and retaliation.

Likewise, the court disagrees with IBM that Castelluccio should not be allowed to recover attorneys' fees associated with efforts to introduce evidence of his successor's earnings in order to establish damages for his wrongful termination. IBM argues that attorneys' fees should not be awarded because Castelluccio did not ultimately introduce this evidence at trial, opting instead to base his theory of damages on his own earnings. Castelluccio argues that not introducing this evidence was a reasonable litigation decision designed to streamline the evidence at trial. "The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir.1992). Applying this analysis, the court cannot conclude that it was unreasonable to explore a successor's earnings as a possible measure of damages and to thereafter abandon that theory in order to streamline the presentation of evidence at trial. Accordingly, the court will not reduce the attorneys' fees award in this respect.

The court also disagrees with IBM's claim that Castelluccio should not be awarded attorneys' fees associated with his argument that IBM violated its progressive discipline policy. IBM argues

that this time is not compensable because Castelluccio abandoned this argument. The record reveals that Castelluccio filed a motion to admit evidence of IBM's failure to follow its progressive discipline policy prior to trial. (Doc. #148). The court granted that motion in part at the pretrial conference. Specifically, it held that evidence of interim reviews would be admissible, but disallowed evidence of performance improvement plans. At trial, Castelluccio ultimately introduced evidence of IBM's policy regarding interim reviews through Kelton Jones. (Tr. 1062 and 1065). This testimony established that interim reviews applied to all executives at IBM, including Castelluccio, and, considered against the fact that Castelluccio never received one, allowed the jury to draw an inference of age discrimination. This argument was therefore not abandoned. Accordingly, the court cannot conclude that Castelluccio abandoned his claim that IBM violated its progressive discipline policy or that a reduction of attorneys' fees is warranted in this respect.

The court also disagrees with IBM's position that Castelluccio abandoned his claim concerning how pension benefits should factor into the calculation of damages. At the pretrial conference, Castelluccio argued that IBM had the burden to establish the amount to be deducted from Castelluccio's damages in order to account for pension payments he received after his termination. Castelluccio argues that he pursued this claim on a good faith belief that an

open question of law existed as to which party had the burden to establish this offset amount, but ultimately decided not to introduce into the record an appealable issue after finding no controlling precedent.  Because the parties discussed this point with the court at the pretrial conference, the court cannot conclude that this claim was abandoned.  Nor can the court conclude that a reasonable attorney would not have pursued what appeared to be an open question of law.  Accordingly, no reduction of attorneys' fees is warranted here.

The court, however, finds that Castelluccio should not be awarded attorney's fees for his failed application to amend the case management plan in order to extend the deadline for disclosure of an expert witness to rebut IBM's expert on employability and efforts to mitigate damage.  The court denied that motion on the basis that Castelluccio was tardy in seeking additional time and had not acted diligently or shown good cause for the extension. (Doc. #44).  The court finds that it would be unreasonable for IBM to bear the costs associated with the motion to amend the case management plan in light of the court's findings in this respect. The court will reduce the billable hours associated with Castelluccio's application to amend the case management plan by $575.

## B. Unsuccessful Motions and Other Tasks

IBM next argues that Castelluccio should not be able to

11

recover for the following unsuccessful motions and other tasks not related to the outcome of the case. IBM specifically argues that Castelluccio should not be able to recover attorneys' fees for: (1) 128.10 hours opposing its two motions to preclude expert testimony; (2) 72.20 hours deposing Barbara Brickmeier, Patricia O'Malley, Garret Walker, and Jack Overacre; (3) 40.7 hours opposing its application to seal; (4) 27 hours spent on a motion to compel discovery; and (5) 22.4 hours spent on a motion to revise the parties' pre-trial stipulations with respect to IBM's pre-trial investigation. This court disagrees.

Castelluccio's opposition to IBM's motion to preclude the expert testimony of his damages expert, Dr. Crakes, was not an unreasonable expenditure of time. IBM sought to preclude Dr. Crakes's testimony on the basis that, inter alia, his opinion was based on an unreliable methodology concerning the exercise of stock options. (Doc. #50, 51). This position was challenged by Castelluccio in his response. (Doc. #72). In granting in part and denying in part IBM's motion to preclude expert testimony, the court agreed with IBM that Dr. Crakes's methodology with respect to the exercise of stock options was unreliable, and accordingly deemed inadmissable that portion of his testimony. However, the court held that Dr. Crakes would otherwise be able to testify on the issue of Castelluccio's economic loss as indicated in other areas of the report. (Doc. #114). The court sees no reason why it

12

should now disallow Castelluccio's partially successful response to IBM's motion to preclude expert testimony. The court cannot conclude that a reasonable attorney would not have pursued Castelluccio's argument that economic damages should be based on stock options.

In the same vein, the court cannot conclude that attorneys' fees are unreasonable for efforts to revise Dr. Crakes's methodology and Castelluccio's opposition to IBM's second motion to preclude expert testimony. After the court's order deeming Dr. Crakes's testimony concerning the exercise of stock options unreliable, Castelluccio sought to cure the defect by basing the valuation of stock options on an arguably less speculative metric--the stock options awarded to his successor. (Doc. #123). The court again held that this second approach did not cure the speculative nature of Dr. Crakes's opinion. (Doc. #127). Although Castelluccio was unsuccessful in this respect, the court cannot conclude that a reasonable attorney would not have similarly engaged in efforts to incorporate a generally recoverable component of damages. Grant, 973 F.2d at 99. Accordingly, the court will not reduce attorneys' fees in this respect.

Neither does the court agree with IBM's argument that a reduction of fees is warranted for the depositions of Brickmeier, O'Malley, Walker and Overacre, who IBM claims added nothing to the litigation or the outcome of the case. It was not unreasonable for

Castelluccio to depose Brickmeier, O'Malley, Walker and Overacre, because those very individuals were identified by IBM in response to Castelluccio's Rule 30(b)(6) deposition Notice. <u>Serricchio v. Wachovia Sec., LLC</u>, 706 F. Supp. 2d 237, 258 (D. Conn. 2010), <u>aff'd</u>, 658 F.3d 169 (2d Cir.2011) (finding that time billed to depose witnesses designated pursuant to Fed. R. Civ. P. 30(b)(6) and 26 was compensable).

The court also disagrees with IBM's position that a fees reduction is warranted for time Castelluccio spent opposing IBM's motions to seal certain material submitted in supported of its motion for summary judgment and motion to exclude expert testimony. IBM argues that Castelluccio's opposition to its motion to seal was unnecessary and therefore not compensable.  The court finds no basis to conclude that this opposition was an unnecessary expenditure of time.  The opposition was induced by IBM's filing of the motions to seal in the first instance.  Moreover, the court, in granting in part and denying in part IBM's motion to seal, agreed with Castelluccio on many of the points of contention raised in his opposition.  (Doc. #117).  No reduction of attorneys' fees is warranted for Castelluccio's justified expenditure of time in this respect.

The court also disagrees with IBM's position that a fees reduction is warranted for Castelluccio's motion to compel discovery.  (Doc. #159).  Castelluccio filed this motion several

months before trial to compel the discovery of certain documents related to IBM's performance review procedures as well as documents related to its "open door investigation."   IBM argues that Castelluccio's motion to compel was unsuccessful and that it was untimely because it was filed more than three years after discovery closed.   The motion to compel was filed well after the close of discovery; however, the court notes that it may have been engendered to some extent by IBM's failure to produce these documents when Castelluccio requested them in 2009.   In addition, the court disagrees with IBM's position that the motion to compel was unsuccessful.   Rather,   the motion to compel was largely rendered moot by the court's subsequent order at the pretrial conference precluding much of the evidence related to performance review procedures and its order precluding evidence of IBM's open door investigation.  (Doc. ## 163, 170).   Castelluccio should not be denied attorneys' fees for a motion to compel discovery in light of the court's evidentiary rulings thereafter, which obviated the need for the production of most of the documents in question.

The court also disagrees with IBM that a reduction of time is warranted for time spent on an unsuccessful motion to revise the parties' pretrial stipulations with respect to IBM's pre-trial investigations. Before trial, the parties stipulated in the joint trial memorandum to certain facts regarding IBM's open door investigation, which were to be read to the jury.  When the court

later granted Castelluccio's motion to preclude the open door evidence, IBM contacted Castelluccio seeking to enter into a revised stipulation of facts with regard to the open door investigation.  The parties were unable to reach an agreement regarding the revision.  Thereafter, Castelluccio filed the motion to revise the joint trial memorandum seeking to remove references to the open door investigation altogether.  IBM now argues that the time Castelluccio spent on this motion was excessive.  Castelluccio argues that the time IBM identifies as excessive does not pertain to the motion to revise the joint trial memorandum; rather, it concerns time spent reviewing the stipulations proposed by IBM subsequent to the court's ruling granting Castelluccio's motion to preclude the open door evidence.  The court accepts Castelluccio's representation of the expenditure of time in this respect. Further, the court's review of the billing entries in question do not support IBM's position that some 22.4 hours were spent on the motion to revise the pre-trial stipulations.  IBM has included a multitude of other tasks, such as Castelluccio's review and revision of exhibit lists and IBM document production, into its estimation of time spent on the motion.  No reduction of time is warranted in this respect.

### 3. Tasks Billed to Two or More Attorneys

IBM next seeks a reduction of 314.2 hours or $87,039.50 for Castelluccio's regular use of two or more attorneys throughout this

case on the same task, or interoffice communication between lawyers. It cites the following as the most egregious examples of this practice: two lawyers attend the Rule 26(f) conference and various routine teleconferences with the court; two lawyers appear to defend plaintiff's deposition and attend those of IBM's witnesses; two lawyers appear at non-binding mediation; and four lawyers confer about whether to make a settlement counter-offer. Castelluccio argues that the billing entries at issue reflect reasonable collaboration between attorneys, that whenever possible he was either not billed or billed at a reduced rate when more than one attorney attended a deposition, and that two partners were never present at any court preceding, including trial.

It is not uncommon for parties to recover attorneys' fees for the collaboration of multiple attorneys on a case, when the district court decides that such collaboration is appropriate given the scope and complexity of the litigation. See, e.g., New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1146 (2d Cir.1983) ("Prevailing parties are not barred as a matter of law from receiving fees for sending a second attorney to depositions or an extra lawyer into court to observe and assist. Nor are counsel forbidden from receiving fees for background research."); Luca v. County of Nassau, 698 F.Supp.2d 296, 305-07 (E.D.N.Y.2010) (awarding attorneys' fees and costs to two attorneys who collaborated on appellate brief and oral argument); Lenihan v. City

of New York, 640 F.Supp. 822, 826 (S.D.N.Y.1986) ("intra-office conferences among attorneys familiar with and working on particular litigation enhance the possibility of competent and efficient litigation, and hours spent in such conferences are not reduced under the rubric of 'billing judgment' unless the result is unproductive.").

The court notes as an initial matter that IBM's position that Castelluccio's counsel spent 314.2 hours working jointly on tasks is a gratuitous over-statement of the time billed in this respect. The 314.2 hours identified in IBM's exhibit 14 include a collection of entries that contain the word "confer" or indicate that counsel discussed an issue with each other or worked together in some respect. Because notations reflecting this collaboration are included alongside other tasks in block time entries, many, if not most of the entries, also record tasks that the attorney or another member of the office performed independently. IBM does not attempt to account for those tasks completed independently and asks for a wholesale reduction of the 314.2 hours it identifies. Therefore, the time that Castelluccio was actually billed for tasks completed by multiple attorneys is substantially less than what IBM claims. Further, the court finds that the 314.2 hours of billing entries in question reflect a collaborative work process as opposed to duplicative billing. Collaboration on all manner of tasks was not unreasonable in light of the scope and factual complexity of the

case.   The time sheet reflects a level of cooperation between attorneys that would be expected in a case of this nature. Accordingly, no reduction of time is warranted here.

### 4. Block Billing

IBM claims that a reduction of attorneys' fees is warranted for the remaining tasks charged in this case to account for Castelluccio's practice of "block-billing," that is, the aggregation of multiple tasks into a single billing entry.   To account for this practice, IBM argues that an additional 35 percent reduction of attorneys' fees, or $173,942.47, is warranted for the remainder of tasks identified in Castelluccio's fee application that it has not specifically challenged above.   IBM argues that Castelluccio's counsel deliberately engaged in block billing in order to conceal his time entries from subsequent judicial review.

The court finds it very hard to believe that Castelluccio's counsel deliberately engaged in block billing in order to conceal his time entries from its review.   In any event, the block billing entries at issue comply with the Second Circuit's requirements of specificity because such entries specify "the date, hours expended, and the nature of the work done."   Carey 711 F.2d at 1148. Although  courts have levied across the board reduction for block billing entries in some instances, "more often, courts have ordered such reductions for block-billing only where there was evidence that the hours billed were independently unreasonable or that the

block-billing was mixing together tasks that were not compensable, or not at all compensable at the same rate." See Hnot v. Willis Group Holdings Ltd., 01 CV. 6558 GEL, 2008 WL 1166309 at *6 (S.D.N.Y. Apr. 7, 2008) (citing collected cases). Here, IBM does not identify which time entries it claims are improper. In the absence of evidence that Castelluccio has obscured unreasonable billing, the court will not impose an across the board penalty simply because a law firm has engaged in a generally accepted billing practice. See Hnot 2008 WL 1166309 at *6.

### 5. Supplemental Motion for Attorneys' Fees

Finally, IBM objects to Castelluccio's (Doc. #231) supplemental motion for attorneys' fees. In Castelluccio's supplemental motion, he seeks attorneys fees for work related to, inter alia, his (Doc. #197) motion for attorneys' fees, including (Doc. #198) a memorandum of law in support of that motion, and (Doc. #229) a reply to IBM's opposition to the motion. He also seeks attorneys' fees for work related to his lengthy memorandum of law in opposition to IBM's motion for judgement as a matter of law, or new trial or remittitur. (Doc. #212). In total, Castelluccio seeks in his supplemental motion fees of $102,360.00, representing 302 hours of work performed by attorneys or paraprofessionals. (Doc. 232).

IBM claims that this figure should be reduced by a total of $54,733.90. IBM specifically argues that 119.80 hours, or

$40,642.50, for work associated with the bill of costs and fee application is excessive for such routine work, and should be reduced by 50 percent. IBM also argues that 18.7 hours, or $15,445.83, should be excluded from the fee award to account for redundant and duplicative billing practices. Finally, IBM argues that the balance of the fee award Castelluccio seeks in his supplemental motion should be reduced by 45 percent, or $29,966.81, to account for block billing entries.

The court has reviewed the billing entries in question and cannot conclude that a reduction of fees is warranted. The court disagrees with IBM's position that the attorneys' fees associated with the bill of costs and fee application are excessive. The attorneys' fees charged for this purpose are explained in large part by the lengthy memorandum of law Castelluccio submitted in support of the motion, his reply to IBM's opposition to the motion, and time spent assembling affidavits and time sheets in support of the motion. (Doc. ## 198, 229). Moreover, much of this work was billed by an associate, as opposed to a partner, and therefore billed at an appropriate rate.

In addition, the court can not conclude that a reduction of fees is warranted for work IBM describes as duplicative. IBM asks for a reduction of fees for time Castelluccio's attorneys spent conferring with each other concerning various aspects of the bill of costs, fee application and other trial post-trial motions.

21

These notations were included alongside other tasks in various billing entries. Consequently, the court cannot conclude that any time spent in this respect was excessive in the first instance. In addition, the court has reviewed the billing entries in question, and concludes that they reflect justifiable collaboration between attorneys as opposed to a duplication of fees.

Finally, the court cannot conclude that an across the board reduction of fees is warranted for block billing entries. Like the other block billing entries IBM challenges above, IBM does not present evidence that Castelluccio obscured these billing entries either. Accordingly the court will not reduce the attorneys' fees award for an acceptable billing practice.

## II. CONCLUSION

For the reasons stated herein, Castelluccio's supplementary motion for attorneys' fees [**Doc. #231**] is **GRANTED.** He is awarded $102,360.00 in attorneys' fees for work set forth in that motion.

Castelluccio's motion for attorney's fees, prejudgment interest, and compensation for increased tax liability [**Doc. #197**] is **GRANTED in PART and DENIED in PART.** Castelluccio is awarded $894,053.50 in attorneys' fees for work set forth in that motion. Absent objection, he is awarded $13,236 in prejudgment interest, and $209,488 in compensation for increased tax liability.

The Clerk is directed to issue a Final Judgment in the amount of $3,718,920.78.

IT IS SO ORDERED.

Dated at Hartford, Connecticut this 23rd day of July, 2014.

/s/ Thomas P. Smith
Thomas P. Smith
United States Magistrate Judge